UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-cv-294

| | |
|---|---|
| Mission Essential Personnel, LLC, <br> 4343 Easton Commons, Suite 100 <br> Columbus, Ohio 43219, <br><br> Plaintiff, <br><br> v. <br><br> Worldwide Language Resources, Inc., <br> 308 Person Street <br> Fayetteville, NC 2830, <br><br> and <br><br> International Management Services, Inc., <br> 34 River Street, Suite 100 <br> Rumford, ME 04276, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint for declaratory relief against Worldwide Language Resources, Inc. ("WWLR") and International Management Services, Inc. ("IMS"), Plaintiff Mission Essential Personnel, LLC ("MEP") states as follows:

### THE PARTIES

1. MEP is an Ohio limited liability company with its principal place of business in Franklin County, Ohio, whose members are citizens of Ohio and Virginia.

2. WWLR is a Massachusetts corporation with its principal place of business in Fayetteville, North Carolina.

1

3. IMS is a Maine corporation with its principal place of business in Rumford, Maine.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between the parties and the value of the object of the litigation is more than $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to MEP's claim have occurred in this district and WWLR's principal place of business is in this district.

6. This Court has personal jurisdiction over WWLR because it is a citizen of this State and has systematic and continuous contacts with this State. This Court has personal jurisdiction over IMS because of its business relationship with WWLR and because IMS engaged in activity in this State in connection with contracts and linguists that are the subject of this action.

## FACTS RELEVANT TO MEP'S CLAIM FOR RELIEF

7. MEP contracts with the Department of the Army, United States Army Intelligence and Security Command ("INSCOM"), Directorate of Contracting, to provide, among other things, linguistic services to the U.S. Army in support of Operation Enduring Freedom – Afghanistan.

8. MEP provides the army with hundreds of linguists fluent in languages such as Pashto and Dari who support the troops in every aspect of their operations, including interfacing with local populations to identify potential threats, mobilizing local resources to meet those threats, communicating with the local population to avoid deadly encounters and building good

will with local populations to avoid future hostilities and thwart enemy efforts to harm U.S. troops.

9. WWLR is a competitor of MEP in providing linguistic services to the military. Currently, WWLR is a subcontractor to IMS in fulfilling a contract with NATO Maintenance and Supply Agency ("NAMSA") to supply linguists that is set to expire on August 1, 2012, and that is not being re-awarded. IMS also claims that some linguists working under the NAMSA contract are directly under contract with IMS. The linguist requirements currently included on the NAMSA contract are being transitioned to INSCOM to fill under contracts between MEP and INSCOM for the provision of linguist services for Operation Enduring Freedom-Afghanistan.

10. INSCOM has expressed its desire to both IMS and WWLR that there be a "smooth transition" of the linguists IMS currently provides under the NAMSA contract to the INSCOM contract. (*See* correspondence attached as Exhibit A.)

11. WWLR and IMS purport to engage their linguists as "subcontractors" ("Subcontractors") and further purport to contractually bind them for set terms that vary in their agreements (the "Subcontractor Agreements").

12. WWLR and IMS claim that the Subcontractor Agreements bind some or all of the Subcontractors beyond the expiration of the NAMSA contract, even though, according to the WWLR Subcontractor Agreements, "[i]n the event the Project is terminated for any reason at any time before the Project is completed, the Subcontractor shall receive no further payment for any services and shall have no obligation to provide any further services." (*See* Exhibit B, Paragraph 2.) "Project," according to the Subcontractor Agreements, "shall mean the United States government Project or any other Project to which the Subcontractor may be assigned to

work by WWLR under this Agreement." (*See* Exhibit B, first unnumbered paragraph.) The Subcontractor Agreements also provide that "The agreement may also terminate if the Project is terminated, as provided in Paragraph 2." (*See* Exhibit B, paragraph 10.) Upon information and belief because no copy has been provided to MEP but based upon the positions taken by IMS's counsel, the IMS Subcontractor Agreements contain the same or similar terms.

13. WWLR's Subcontractor Agreements provide that "WWLR may terminate this Agreement at any time during the term of this Agreement or during any subsequent renewal period for any reasons without any further obligation in the Subcontractor, with or without cause and with or without notice." (Exhibit B, paragraph 10.) The Subcontractor has no such right to terminate under the Agreement. Should WWLR choose to exercise this right or should the Agreement otherwise be terminated, the Subcontractor is not entitled to receive any further payments, yet is still bound by numerous obligations in the Agreement. (Exhibit B, paragraph 10.) In addition, Subcontractors purportedly are bound until the "Scheduled End Date" of the Agreement, yet are paid only for days actually worked, (Exhibit B, paragraph 4), and WWLR has no obligation under the Agreements to assign work to Subcontractors. Upon information and belief because no copy has been provided to MEP but based upon the positions taken by IMS's counsel, the IMS Subcontractor Agreements contain the same or similar terms.

14. WWLR's Subcontractor Agreements contain a restrictive covenant not to compete:

> . . . the Subcontractor covenants and agrees that for the entire term of the Agreement, and for 9 (nine) full months thereafter, he or she will not, whether on his own behalf or on behalf of any other person or entity, including but not limited to the United States government, compete with WWLR in any manner, either directly or indirectly, with respect to providing any product or service offered by WWLR, including but not limited to providing analyst, screener, translation and interpretation services or linguists or other personnel capable of providing translation and interpretation services and/or other services, sought by the United

States government, in the Placement Area or the Placement Areas where the
Subcontractor has worked under this Agreement.

(("Restrictive Covenant") (*see* Exhibit B, paragraph 12.) Upon information and belief because no copy has been provided to MEP but based upon the positions taken by IMS's counsel, the IMS Subcontractor Agreements contain the same or similar terms.

15. WWLR previously brought an action against one of its former linguists, Ramazan Ruzgani, and MEP, claiming that Mr. Ruzgani breached the Restrictive Covenant contained in his Subcontractor Agreement, and bringing tort claims against MEP for soliciting Mr. Ruzgani to employment with MEP purportedly in violation of his Restrictive Covenant. That action was removed to this Court and titled *Worldwide Language Resources, Inc., v. Mission Essential Personnel, LLC, et al.*, Case No. 5:08-CV-373(D) ("*WWLR v. MEP*").

16. The parties to *WWLR v. MEP* entered into a Settlement Agreement on April 16, 2010 ("Settlement Agreement"), in which WWLR agreed

> that it will not assert any claim or action that has accrued or may accrue in the future against MEP or Ramzan Ruzgani arising out of or related to MEP's recruiting or hiring of WWLR's linguists in violation of a restrictive covenant. WWLR further agrees that it will not assert any claim or action that has accrued or may accrue in the future against any linguist recruited or hired by MEP arising out of or related to MEP's recruiting or hiring of that linguist in violation of a restrictive covenant.

(Exhibit C, paragraph 2.)

17. The Settlement Agreement is binding upon WWLR's "predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, employees and shareholders." (Exhibit C, paragraph 15.) IMS is an affiliate of WWLR by virtue of their contractor/subcontractor relationship in fulfilling the NAMSA contract. In addition, any Restrictive Covenant contained in IMS's Subcontractor Agreements is void for the same reasons asserted by MEP in *WWLR v. MEP*.

18. WWLR and IMS have threatened to pursue legal action against MEP should it seek to offer employment to the Subcontractors for the purpose of fulfilling the INSCOM contract.

19. WWLR and IMS's attempt to restrict the use of highly qualified, highly skilled, and highly sought-after linguists threatens United States national security and puts our troops at greater risk of death or injury in the field.

20. A real, substantial, and justiciable controversy now exists between the parties as to the enforceability of the Subcontractor Agreements, the enforceability of the Restrictive Covenant in IMS's Subcontractor Agreements, and MEP's ability to engage the Subcontractors without liability to WWLR or IMS.

## COUNT ONE

### DECLARATORY RELIEF

21. MEP incorporates, as if fully rewritten herein, the allegations contained in paragraphs one through twenty, above.

22. The Subcontractors are now providing unique, significant, and confidential linguistic services to the United States military. WWLR seeks to restrict those services by enforcing the terms of its Subcontractor Agreements and by threatening legal action against MEP for seeking to engage Subcontractors so that it may provide the requested continuity in the linguistic services critically needed by the United States military.

23. A real and justiciable controversy exists between the parties which this Court has the power to resolve by declaring the rights of the parties pursuant to 28 U.S.C. § 2201.

24. MEP is entitled to a declaration from this Court as follows:

a.  the Subcontractor Agreements that purport to restrict a Subcontractor from leaving WWLR and/or IMS are invalid and unenforceable as a matter of law because, *inter alia*, they lack mutuality of obligation;

b.  the Subcontractor Agreements that purport to restrict a Subcontractor from leaving WWLR and/or IMS are invalid and unenforceable as against public policy because, *inter alia*, they restrict the availability of resources critical to the national security of the United States of America, putting our troops at greater risk of death or injury in the field;

c.  the Subcontractor Agreements that purport to restrict a Subcontractor from leaving WWLR and/or IMS are invalid and unenforceable as they restrict activities being conducted on behalf of the United States government and military in the prosecution of its war effort;

d.  MEP is not liable in tort under North Carolina law for engaging the Subcontractors;

e.  The Settlement Agreement binds IMS;

f.  The Settlement Agreement bars WWLR and/or IMS from suing MEP for engaging the Subcontractors;

g.  the Restrictive Covenant in IMS's Subcontractor Agreements is invalid and unenforceable as a matter of law because, *inter alia*, it lacks mutuality of obligation;

h.  the Restrictive Covenant in IMS's Subcontractor Agreements is invalid and unenforceable as against public policy because, *inter alia*, it restricts

    the availability of resources critical to our national security, putting our troops at greater risk of death or injury in the field;

i.  the Restrictive Covenant in IMS's Subcontractor Agreements is invalid and unenforceable as it restricts activities being conducted on behalf of the United States government and military in the prosecution of its war effort;

j.  the Restrictive Covenant in IMS's Subcontractor Agreements is invalid and unenforceable because it is overbroad, unreasonable, and does not promote a legitimate business interest;

k.  MEP has a legal justification for engaging the Subcontractors for service on behalf of the United States military and government and its conduct in doing so is lawful;

l.  a court of equity may not exercise equitable jurisdiction to enforce the Subcontractor Agreements since the likely harm to third-parties is significant, including the harm that will be suffered to the United States government's war effort in Operation Enduring Freedom – Afghanistan, and the substantial increased risk of death or bodily injury to United States troops fighting in Afghanistan; and

m.  a court of equity sitting in the United States may not exercise equitable and extra-territorial jurisdiction to enforce the Subcontractor Agreements in Afghanistan.

WHEREFORE, MEP respectfully requests the following:

1. That the Court grant MEP declaratory relief;

2. That MEP be granted all costs and attorneys' fees in connection with these claims; and

3. That MEP be granted any and all other relief as the Court may deem necessary and proper.

Respectfully submitted,

MOORE & VAN ALLEN PLLC

By: /s/ Anthony T. Lathrop
Anthony T. Lathrop (NCSB #15941)
Michael J. Byrne (NCSB #23577)
Post Office Box 13706
Research Triangle Park, North Carolina 27709
Telephone: (919) 286-8025

Attorneys for Plaintiff
Mission Essential Personnel, LLC

Of Counsel:

Anthony C. White
Jennifer M. Mountcastle
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215
614.469.3200
614.469.3361 (facsimile)
Tony.White@thompsonhine.com
Jennifer.Mountcastle@thompsonhine.com